## HAMERSLY *against* LAMBERT and others.

After publication has once passed, witnesses cannot be examined, unless under very special circumstances.

*To enlarge publication,* is to stay or postpone the rule for passing publication; and a motion for that purpose may be granted, on reasonable cause shown; but this is very different from a motion to examine witnesses, after publication has actually passed.

*April* 29th.    *BURR,* for the defendants, moved for leave (publication having passed) to examine witnesses, on an affidavit stating that the defendants had several material witnesses to examine ; and, on the further usual affidavit, that the defendants, or their solicitor, had not seen or been informed of the depositions taken, and would not, &c.

*G. Brinkerhoff,* for the plaintiff, opposed the motion, on an affidavit that publication had actually and duly passed, on the 4th of *October* last, and that the cause was noticed for hearing on the 16th of *October* last, and would have been brought on, if the time of the Court had then permitted.

No reason was assigned on the part of the defendants for not examining the witnesses before.

[ * 433 ]    THE CHANCELLOR. To allow this motion, after publication has passed, without good cause shown, and without a sufficient excuse for the delay, would be overturning \*the established course and practice of the Court, and setting a mischievous precedent. The rule not allowing evidence to be taken after publication, is founded in wisdom and sound policy. It is intended, as Lord Ch. *Manners* observed, in a late case, (*Ball & Beatty,* 284.) to guard against the mischiefs which would result from holding out an opportunity to a party to supply a defect by fabricated evidence. The

334

same principle prevails in the Courts of law, in respect to the
granting of new trials.   A new trial will not be granted, if
the party has not used due diligence to prepare himself for
the first trial, because, among other objections, it would tend
to introduce fraud and perjury, by taxing the ingenuity of a
party, after the disclosure of his adversary's strength, to sup-
ply all deficiencies of testimony on his side.   (1 *Wils.* 98.
2 *Binney*, 582.   9 *Johns. Rep.* 78.)   The party, on such
motions as this, does, indeed, make the usual oath, that *he
has not seen, heard, or been informed of, nor will he see, hear,
or be informed of, the contents of the depositions taken,* until
publication shall be again duly passed; but such an oath
ought not to be much encouraged.   It is partly promissory:
it may be difficult to be strictly kept, and is of dangerous
and suspicious tendency.   It is of great importance, in the
administration of justice, and ought to be constantly incul-
cated upon suitors, that they must bestow *diligence* in the
prosecution and defence of their suits, and that every step
in the progress of the cause is to be taken *orderly,* and in
*due season;* and that though the Courts are indulgent to
mistakes and unavoidable accidents, yet they cannot be so
to the mere negligence or wilful defaults of parties, which
only tend to hinder, fatigue, and oppress each other.

The practice has appeared to me to be so lax on this point,
and applications for this kind of indulgence are so frequent,
that I have thought it necessary to look into the practice
and opinions of the *English* Court of Chancery, and to see
how far the rule has been established and supported.

*There is an important difference between an application
to enlarge publication, for the purpose of taking testimony,
and an application to take testimony, as in this case, after
*publication has passed.*   The books frequently speak inaccu-
rately on this point, by using terms which tend to confound
all distinction.   To stay or enlarge publication, is, strictly
speaking, to postpone to a further time the passing publica-
tion, and it presupposes that publication has not passed.
To enlarge publication, in this sense of it, is almost a matter
of course, if there be any reasonable cause shown, and the
other party will not suffer any harm, as where the hearing
will not be put off.   It is said, (*Gilbert's Forum Romanum,*
144.) That the motion, in this case, must be upon notice
and reason shown, why the party could not examine his wit-
nesses sooner, though, if it will not produce injurious delay,
" The Court will enlarge publication upon asking for."   But
in *Harrison's Prac.* (vol. 1. 501.) the order is stated to be
as " of course," without notice; and it is upon terms, so as
not to hinder the other party from setting down his cause;
and if publication has been already once enlarged, then the

[ * 434 ]

1817.

HAMERSLY
v.
LAMBERT.

[ * 435 ]

motion is upon notice and affidavit showing satisfactory cause.  In the case of *Gearl* v. *Barber*, (2 *Bro. Ch. Cas.* 1.) the defendant was allowed a new commission to examine witnesses ; but Lord *Thurlow* required it to be at his own expense, and, *though publication had not passed,* he still required an affidavit that the defendant, or his agents, had not, and would not willingly see or be informed of the depositions, until, &c.   So, in a late case in the exchequer, (*Dingle* v. *Rowe*, 1 *Wightwick*, 99.) a motion to enlarge publication, and sue out a new commission, was granted on payment of costs, in case the opposite party should not examine in chief, but only cross examine, and on the commission being made returnable without delay, and when it would produce no inconvenience to the plaintiff, and on affidavit by the solicitor that the witnesses were material and that *he had not, and he believed the defendants had not, been informed of the contents of the depositions.   Both these motions were brought on in term time, upon regular notice.   I observe also, that according to the old practice in *Bohun's Cur. Can.* (p. 328.) such an affidavit of not having seen the depositions is used as well *before* as after publication, when a new commission to examine witnesses is asked for.

But if publication has *actually passed,* when application is made for leave to examine witnesses, then it must be upon special and satisfactory reasons to be assigned, both of the previous neglect, and of the further examination, and the Court has always watched such an application with a wakeful jealousy.

It was among the ordinances of Lord *Bacon,* in the early settlement of the practice of the Court, (*Bacon's Ordinances,* No. 69. 74.) that if both parties join in a commission, and the defendant produces no witnesses, but, afterwards, seeks a new commission, the same shall not be granted ; and he shall not have liberty to examine his witnesses, but by special order, and upon some extraordinary excuse for his default ; and that no witness should be examined after publication, except by consent, or by special order, *ad informandam conscientiam judicis.*   This rule, nearly *verbatim,* we find afterwards adopted in Lord *Coventry's* rules, and in those of the *lords commissioners,* during the time of the commonwealth, and in those of Lord Chancellor *Clarendon.* (See *Beame's Collection of Orders,* p. 73. 185, 186. 493.)   It may be here incidentally remarked, that the *English Court of Chancery* owes almost all the great outlines and permanent principles of its practice to the ordinances of Lord *Bacon,* made, as he expressly declares, for the better administration of justice in his Court.   In this respect, he outstripped the wisdom of his age, and anticipated the experience of poster

336

ity, *as he confessedly did, also, in his knowledge of the laws and limits of the human understanding.

In the case of *The Mayor of London* v. *Dorset*, (1 *Ch. Cas.* 328.) Lord *Nottingham* said, that the rule of not examining after publication, had been strict in this point; but he admitted that special cases rested in discretion, for, he said *the Court is the judge;* and, afterwards, in *Newland* v. *Horseman*, (2 *Ch. Cas.* 74.) he allowed a commission to examine after hearing ; but it was upon a new point which had been raised, at the hearing, by the Court.   But we find him again, in *Jones* v. *Purefoy*, (1 *Vern.* 47.) taking notice of " what dangerous consequence it would be, if, after publication passed, and people seeing where a cause pinched, they should then be at liberty to look out witnesses to bolster up the faulty part.of the cause; the necessary consequence would be perjury."

The successor of Lord *Nottingham* expressed himself with equal decision on the danger and impolicy of these subsequent examinations.   The lord keeper, (1 *Vern.* 253. *Anon.*) declared, that it should be a fixed rule for the future, that on leave to examine after publication, upon making the usual oath of not having seen the depositions, the other side should be at liberty to examine *at large*, as well as to cross-examine the witnesses produced by the party making the motion ; and that though it might seem hard that any one should have liberty to examine at large, after he had seen his own depositions, yet it was a reasonable *penalty* on such as would not examine in time, but waited until after publication, to take advantage of the other party.   Afterwards, in *Cann* v. *Cann*, (1 *P. Wms.* 727.) Lord *Macclesfield* observed, that " the prudent methods of this Court were, that after publication is passed, and the purport of the examinations known, neither side is allowed to enter into a fresh examination of the matters in question, since, otherwise, there would be *no end of things, and such a proceeding would tend to perjury as well as vexation."   The same doctrine was again declared by Lord *Talbot*, in *Smith* v. *Turner*, (3 *P. Wms.* 413.) and that the examining witnesses, after publication passed, especially where it may relate to the matter in issue, was against the rules of the Court, and might be greatly inconvenient, and render causes endless.

[ * 437 ]

The rule, by this time, had become perfectly settled, that if publication has actually passed, the party who meant to enlarge publication, (to use the common, but inaccurate expression,) must show, by affidavit, some *material* witness to be examined, and *satisfactory reasons* why he could not be examined before ; and the party, and his clerk, and solicitor, must make oath that they have not seen, or been informed

1817.

HAMERSLY
v.
LAMBERT.

[ * 438 ]

of, the contents of the depositions, and that they will not, until leave is given, &c., and then the party will be limited as to time, so as not unnecessarily to delay the hearing. This is the rule laid down in the books of practice. (*Gilbert's F. R.* 146. *Wyatt's P. R.* 193. 1 *Harr. Pr.* 503.)

All due precaution is taken by the established course of the Court, that the parties should be warned of the duty and necessity of taking their proof in season; for publication cannot pass until there has been a rule to produce witnesses, and a rule *nisi* to pass publication, and each of these must be a rule of three weeks. (Rule 20 of the printed rules of this Court.)

It will be seen by the case of *Whitelocke* v. *Baker*, (13 *Ves.* 511.) that the same principle still prevails in the *English* Chancery. In that case, Lord *Eldon* took occasion to state the principles and practice upon the motion to enlarge publication. "The Court will not," he observes, "enlarge publication (meaning, no doubt, as he falls into the common inaccuracy, that they will not permit testimony to be taken after publication passed) without *a very special case* made. The party's want of knowledge of the rules of proceeding, or want of attention in his solicitor, are not sufficient. The rules of justice are founded upon great general principles, not to be broken down by such circumstances. Even such a motion requires an affidavit that the party, his clerk in Court, and solicitor, have not seen, or been informed of, and that they will not see, or be informed of, the contents of the depositions, until the enlarged time of publication. That is founded upon this, that no more dangerous mode of proceeding can take place, than permitting parties to make out evidence by piecemeal, and to make up the deficiency of original depositions by other evidence. *If, previously to publication,* it appears that there may be occasion for further testimony, and that there is a just opportunity for obtaining it, and it can be had without danger or injustice to other parties, the habit has been to allow the publication to be enlarged upon affidavit." But the Court will not do even that to the prejudice of a party, by delaying the hearing.

My object in thus showing the very great authority and sanction for this rule of practice, has been, to cause it to be better understood and observed. It will, also, have been seen, that this, like other general rules, necessarily has exceptions, which will be allowed when a sense of justice, combined with a sound discretion, shall dictate the case. Many such exceptions, founded on special circumstances, are to be found in the books. If no witnesses have been examined on either side, one great objection is removed, and then the case will depend upon the extent of the negligence and delay at-

tending it. So, on the other hand, if the depositions have not only been published, but *actually seen by the parties,* a still stronger difficulty arises; and the lord chancellor, in the case last referred to, observed, upon such a fact, that though the evidence sought might be " most highly material," he would not dare to *trust himself with laying down a precedent for its admission in such a case.

1817.

Ex parte
Crumb.

[ * 439 ]

The present application is not accompanied with any reason whatever, for not examining the witnesses at the proper time, and the motion is, consequently, denied, with costs.

Motion denied. (*a*)

(*a*) Vide *Hamersly* v. *Brown,* ante, p. 428.