BAKER, (BANK OF COLUMBIA v.) See Case No. 802.

## Case No. 764.

### BAKER v. BIDDLE.

[Baldw. 394.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1831.

EQUITY — JURISDICTION — ADEQUATE REMEDY AT LAW—ANCILLARY RELIEF—PLEADING—BILL FOR DISCOVERY—DEMURRER TO JURISDICTION — BILL FOR ACCOUNT—STALE CLAIM—TRUSTS.

1. The sixteenth section of the judiciary act [1 Stat. 82] is a declaratory act, settling the law as to cases of equity jurisdiction, in the nature of a proviso, limitation, or exception to its exercise.

2. If the plaintiff has a plain, adequate, and complete remedy at law, the case is not a suit in equity under the constitution or the judiciary act.

[Cited in Carpenter v. Providence Wash. Ins. Co., 4 How. (45 U. S.) 223; Pierpont v. Fowle, Case No. 11,152; Foster v. Swasy, Id. 4,984; Clark v. Sohier, Id. 2,835; Waring v. Clarke, 5 How. (46 U. S.) 472; Bunce v. Gallagher, Case No. 2,133; Curry v. McCauley, 11 Fed. 370; Spring v. Domestic Sewing Mach. Co., 13 Fed. 448; Yeatman v. Bradford, 44 Fed. 538.]

[See Brown v. Pacific Mail S. S. Co., Case No. 2,025; Crane v. McCoy, Id. 3,354; Sullivan v. Portland & K. R. Co., 94 U. S. 806; Boyce v. Grundy, 3 Pet. (28 U. S.) 210; Morgan v. Beloit, 7 Wall. (74 U. S.) 618.]

3. There cannot be concurrent jurisdiction at law and in equity, where the right and remedy are the same, but equity may proceed in aid of the remedy at law by incidental or auxiliary relief, though not by final relief, if the remedy at law is complete. Its jurisdiction is special, limited, and defined, not as in England, where it depends on usage.

[Cited in Pierpont v. Fowle, Case No. 11,152.]

4. A bill for discovery does not lie for matter of which plaintiff has knowledge and means of proof, or of matter whereof he has the same means of information as the defendant (as public records). If such bill is sustained, it does not give power to make a final decree, if relief is not incidental to the discovery, where nothing is disclosed by the answer, or the whole equity of the bill is denied.

5. Though the rules and principles established in the English chancery at the revolution, are adopted in the federal courts, the changes since introduced there are not followed here, especially on matters of jurisdiction, as to which the sixteenth section is imperative.

[Cited in Pierpont v. Fowle, Case No. 11,152.]

6. An objection to jurisdiction for the want of parties, of equity in the bill, or of there being a remedy at law, need not be made by demurrer, plea, or in the answer; it may be made at the hearing, or on appeal.

[Cited in Pierpont v. Fowle, Case No. 11,152; Yeatman v. Bradford, 44 Fed. 538.]

7. A bill for an account does not lie, where an account has been rendered and received.

8. If an account is retained an unreasonable time without objection, it becomes in law and equity a stated or settled account, and a bar to an action or bill to account.

[Cited in Duryee v. Elkins, Case No. 4,197.]
[See Hopkirk v. Page, Case No. 6,697; White v. Macon, Id. 17,553; Bainbridge v. Wilcocks, Id. 755.]

---

[1] [Reported by Hon. Henry Baldwin, Circuit Justice.]

9. A bill to account lies only when an action to account lies at law, and when the case comes under some appropriate head of equity jurisdiction.

10. It does not lie on an agreement to procure an assignment of judgments for the use of the plaintiff, when he has evidence of the agreement, and compensation for the breach can be had in damages, nor where there has been a great lapse of time in asking it.

11. The staleness of a demand may be relied on at the hearing, though there is no plea, or demurrer, or the answer does not insist on it; equity acts by analogy, or rather in obedience to the statute of limitations on stale demands.

12. Equity has cognizance only of executory trusts, not of those executed, or where a trust can be enforced at law; there must be some act to be done by the trustee.

13. A trust once executed cannot be revived by the non execution of a trust resulting from a subsequent agreement relative to the same subject.

14. An agency closed wholly or on any distinct matter, as to which no act remains to be done by the agent, is not cognisable in equity, under the head of account or trust.

In equity. The substance of the case stated in the bill was the following. Valentine Eckert was the owner of a valuable farm in Berks county, on which there were heavy incumbrances by judgment; his son-in-law, Isaac Baker, who resided in Virginia, on the 27th of April 1819, caused 2800 dollars to be put into the hands of the defendant, to be so applied as to prevent a forced sale of the property, and to protect Baker from loss; that the trust was accepted by the defendant, who agreed to procure assignments of the judgments, which he was directed to pay out of the money he received. By the letters of the defendant from time to time received by Baker, he was informed of the proceedings of the defendant, which resulted in a sheriff's sale of the farm to him in 1821, for 10,200 dollars, of which he gave Baker notice, who confided in the assurances of the defendant, that the agreement to assign the judgments had been complied with until March 1823, when he found that he would lose the money advanced on the judgments, by their not having been assigned to him. On the 30th of April 1819, the defendant rendered an account, charging himself with the 2800 dollars, claiming credit for money paid on certain judgments therein specified, leaving a balance of 191 dollars to be applied to a debt due the Bank of Pennsylvania. Another account was furnished by the defendant after the sheriff's sale, by either of which he was indebted to Baker in a large balance. Baker made his will in 1829, appointing the plaintiff his executor, who demanded a settlement and payment of the balance, the defendant paid 1000 dollars on account, and offered to pay 695 dollars, the balance admitted to be due on receiving an indemnity against any claim on him by the creditors of Eckert, and exhibited a statement showing such balance. But this statement is inaccurate and unjust, as it gives Baker no credit for the judgments which were to have been transferred to him, and ought to have been paid to him out of the proceeds of the sale, leaving in the defendant's hands a large balance, the precise amount of which cannot be ascertained, inasmuch as the plaintiff has not a detailed account of costs and expenses and payments made by the defendant, for which balance he is accountable, but has refused to account though repeatedly applied to to do so, and denies that he ever agreed to procure assignments of the judgments he paid with Baker's money. The bill prays for a full answer to all the matters charged, whether the defendant did receive the 2800 dollars, and by means thereof procure the control of the sale of the farm, whether he assured Baker that he should have the benefit of the judgments he had paid, whether he did not cause the sale of the farm by execution, and by his silence confirm Baker's belief, that he was to be first paid his advances. That he may set forth the dates and amounts of the judgments which were liens on the farm, the amount he paid thereon, the time of payment, whether the balance in his hands was mixed with his other money, that he be decreed to account for all moneys or liabilities for which he is accountable to the estate of Baker, and pay the balance with interest, and for such further and other relief as the case requires.

The answer admits that Eckert owned the farm, states the judgments against him to be 13,900 dollars, admits the receipt on the 27th of April 1819 of the 2800 dollars, and a deed for the farm from Eckert to Baker dated 10th September 1818, for the consideration of 20,000 dollars acknowledged 23d of January 1819, which he had recorded at the request of the person who gave it to him. He also received a bond of J. G. to Baker on which there was then due 894 dollars; at the time of receipt of the money, defendant was directed to pay certain judgments against Eckert, and to apply the balance with the proceeds of the bond to other judgments, so as to induce the creditors not to press a sale, till Baker would have time to pay all judgments entered before the acknowledgement of the deed, and he applied the money accordingly. He avers that in receiving or paying the money, he did not conceive he was agent, attorney or trustee of Baker, or acting for him in any capacity whatever, that he was not and is not bound to account to him or his representatives therefor, but that he acted solely to serve Eckert and family, so as to enable them to profit by the sale to Baker. He denies that when the 2800 dollars was put into his hands, he was directed or requested to procure an assignment of the judgments he was directed to pay, or that he agreed or undertook to have it done, or that any intimation was given to him that such was the wish of Mr. Baker, the

defendant believed that Baker rested on the security of the deed, and would pay the residue of the judgments. The bond of J. G. was due in July 1819 and defendant was directed to pay it to the judgment in which one Eesenbrier was plaintiff. The first communication received from Baker after April was a letter dated 24th of September 1819, directing the 2800 dollars to be entered on the judgments which had been paid, for the benefit of Baker, it being necessary then, as he was unable to pay all the judgments as he wished, and at the time agreed on for their payment, owing to the scarcity of money; that a sale of the farm was unavoidable, and had better be made by the sheriff. On the receipt of this letter defendant procured several of the judgments to be marked on the docket for the use of Baker, took out execution on one of them, levied on the farm and informed Baker by letter, who approved of what had been done, and desired the defendant to let him know the time of sale, this was done but Baker did not attend. The farm was sold and purchased by defendant in November 1821, he gave notice thereof to plaintiff and offered to convey it to him, but he declined, he also stated to him the appropriation of the purchase money to which no objections were made. He never received the money due by J. G., and delivered up the bond to the order of plaintiff, he never refused to settle with plaintiff or to pay him any balance in his hands, but on ascertaining the balance, authorized plaintiff to draw on him for 1000 dollars, paid that amount, forwarded him an account with such explanations as gave him a full account of what had been done. He afterwards offered to the plaintiff's counsel to correct any errors in the account, and put into his hands 695 dollars the balance of the account as stated by defendant to be paid plaintiff on his indemnifying defendant. He avers this account to be correct except an error of 131 dollars, which he is willing to pay on being indemnified; that he never undertook to have the judgments assigned, or assured Baker that they had been assigned so as to give him the benefit of them. The two accounts together with the usual affidavit were annexed to the answer. A great number of letters between the defendant and Isaac Baker were read, at the hearing several witnesses were examined, but there was nothing which varied the case as it appeared in the bill and answer, so far as affected the questions on which it was argued and decided. [Bill dismissed.]

Mr. Joseph R. Ingersoll, for complainant.

By the deed from V. Eckert to Isaac Baker, the testator had become the owner of the Moslem farm, either in his own right or as trustee for Eckert; the 2800 dollars was placed in defendant's hands for the purpose of paying such judgments as were liens before the date of the deed, and having been accepted by him he became a trustee for some one. Though he denies that it was for Baker, he admits the money was received from Baker to save the property, he was not bound or authorized to pay any judgment against Eckert after the deed took effect, as it not only would not tend to save, but would expose the property to be sacrificed on process by the elder creditors. Notwithstanding his denial, he has accounted to Baker and him only, has paid his executor 1000 dollars out of the money received from him, has paid judgments and marked them on the docket for his use, and paid for recording the deed out of his money; which acts estop defendant from denying the agency created between him and Baker. The relation of trustee and cestui que trust results by legal operation against his will. 1 Johns. Ch. 205; 2 P. Wms. 414. The result of this trust is, that he can do no act to the injury of Baker, or make any unauthorized application of his money, without liability to account to him, for all acts in which he did not acquiesce after being fully informed. 3 Swanst. 81. The money was advanced for a special purpose, and with special directions how to appropriate it, it was applied to other purposes inconsistent with those directions, besides which, the defendant acted as agent for others, whose interests were opposed to Mr. Baker, when it was his duty to have acted entirely for him, or to have renounced the agency, when he found it incompatible with his relations to others. His agency was limited, so as not to justify him in making any agreement to give a preference to any judgment, over those which were for the use of Baker, or to bind him to give any indemnity; he might use the money in his hands to effect the object, but when that could not be done, was bound to refund it. In October, 1819, on the faith of the money received on Gardiner's bond, he promised to procure an assignment of certain judgments to Baker, and wrote him he had done it, whereas it appears that it was not done and the money applied to other purposes, by which Baker has lost land and money: this is a breach of trust for which he is answerable to the amount misapplied, with interest.

Mr. Dunlap and Mr. J. C. Biddle, for respondent.

The answer denies any agreement to procure an assignment of the judgments, and being responsive to the bill is evidence, unless disproved by two witnesses; it is not pretended to have been made when the 2800 dollars was given to the defendant in April, 1819, nor was such pretense made till long afterwards. The receipt given for the money contained no such promise, the account rendered within four days afterwards and immediately received by Mr. Baker, stated the amount paid on those judgments, and no objections made to it. In directing defendant to pay these judgments. he was not requested

to procure assignments; this was an after-thought in October following; having once paid the money on them, they could not be revived, or be held for the use of Mr. Baker so as to affect strangers; unless an assignment or entry for his use was made at the time of payment, they were satisfied and extinguished pro tanto. 1 Serg. & R. 399; 12 Serg. & R. 37, 41; 2 Rawle, 128. After the payment in April, Mr. Baker had no remedy under them by any subsequent act of defendant or the creditors, any undertaking of defendant in October, therefore, if made, was made under a mistake of the law, it was impossible to be performed so as to benefit Mr. Baker, and its non performance was no injury to him; but if there was a breach of an agreement, and damages have been sustained, the court has no jurisdiction. No fraud is alleged in the bill, the plaintiff had a full account before it was filed, nothing new is disclosed by the answer or evidence, the agency was special, its execution was stated twelve years before suit brought, so that if the plaintiff has any cause of action, it is at law where his remedy is complete, it is therefore not a case for equity. 1 Pet. C. C. 356, [Andrews v. Solomon, Case No. 378.] The sale of the property appears of record, the sheriff is accountable for the purchase money, so that without any resort to equity, the plaintiff has ample means of information, and can have full justice done him at law; besides he has disavowed the acts of defendant, which is a denial of any trust existing between them, and if there is any money due plaintiff from the proceeds of the sale, he must look to the sheriff. This court cannot decide on the rights of the judgment creditors in state courts, the court which issues the process for sale, makes the appropriation of the proceeds, according to their judgment on the priority of the respective judgments. A purchaser at sheriff's sale, is not accountable to the judgment creditor for the purchase money, it is paid to the sheriff, who brings it into court or appropriates it according to their order, and the priority of the liens on record. 14 Serg. & R. 257. The object of the plaintiff's bill, is to raise a trust by the purchase at sheriff's sale so as to make defendant accountable for a supposed balance, this is incompatible with any trust resulting from the receipt of the 2800 dollars, which was advanced for the purpose of preventing a sheriff's sale; they cannot, therefore, make out a trust for which defendant must account in equity. Being distinct transactions with distinct objects, they present separate causes of action at law, for acting either negligently in the execution of the agreement, or in violation of it, but neither transaction presents a case for equity. The defendant had accounted for the 2800 dollars before the alleged agreement to procure assignments; after the sheriff's sale, the priority of the judgment was no matter for account, or executory trusts, such as are alone cognizable in equity,

there remained no act for defendant to do of which equity could compel the performance, it follows that the plaintiff's claim must rest in damages by a suit at law. But were this a case for equity, the staleness of the demand after an account had been rendered twelve years, would be a sufficient reason for its rejection. Jeremy, 548. This objection may be taken advantage of at any stage of the case. By the rules of chancery, and the twenty-third rule of the supreme court, we may set up any special matter in the answer, without demurrer or plea. On the case made out by the plaintiff, his remedy is complete at law, which, by the sixteenth section of the judiciary act, bars the jurisdiction of a court of equity; here is no case for a discovery, as the plaintiff had full knowledge before filing the bill, so that no discovery was necessary. 4 Wash. C. C. 349, [Mayer v. Foulkrod, Case No. 9,341.] If there was any mistake, it could be corrected at law. 2 Wash. C. C. 129. [Hurst v. Hurst, Case No. 6,932.] Where the legal remedy is fully adequate to the object, the sixteenth section applies, unless there are some special circumstances to take the case out of it,—2 Mason 270, [Bean v. Smith, Case No. 1,174;] [Russell v. Clark,] 7 Cranch, [11 U. S.] 89,—as in some cases of dower,—[Herbert v. Wren,] 7 Cranch, [11 U. S.] 370, 376,—the reforming a mistake in a contract,—[U. S. v. Howland,] 4 Wheat. [17 U. S.] 115,—or some defect in the remedy at law,—[Smith v. M'Iver,] 9 Wheat. [22 U. S.] 532. The want of jurisdiction is always open; a bill will be dismissed on this ground, after answer. [Fowle v. Lawrason,] 5 Pet. [30 U. S.] 503. It does not attach to a case of trust founded on mere allegation in the bill that there was a trust, or the receipt of money by one for the use of another, as a case for account. There must be some appropriate head of equity under which the obligation to account arises, (Jeremy, 504; 6 Ves. 140; 13 Ves. 131; 8 Ves. 193; 1 Brown, Ch. 194; 3 Brown, Ch. 137,) and some defect in the law, (1 Schoales & L. 205; 1 Ves. Jr. 416; 1 Ves. Sr. 161; 4 Brown, Parl. Cas. 436.) If assumpsit will lie, it is a case for law. Cary, 135, 139.

Mr. J. R. Ingersoll, in reply.

As the defendant has not pleaded, demurred, or set up in his answer the objection that the plaintiff has a remedy at law, it is now too late; the old practice was to plead it, then demur, or in the answer state that it would be relied on. Gilb. Ch. 220; Bunb. 29. It is too late to reserve it till the hearing,—2 Johns. Cas. 339,—because it is an acquiescence in the jurisdiction of equity, and prevents plaintiff from proceeding at law, having the same effect as an agreement to go on and settle the account,—2 Caines, Cas. 40, 52; 1 Wash. C. C. 320, [Gallagher v. Roberts, Case No. 5,194.] If there is no equity in the bill, defendant must demur. If the court has not jurisdiction, it must be pleaded. 1

Atk. 544; 13 Ves. 276. The objection cannot be taken at the hearing. 2 Vern. 483; 1 P. Wms. 477; 1 Ves. Sr. 446. The sixteenth section of the judiciary act, [1 Stat. 82] is only declaratory of the common law, affirming and adopting the rules of the English chancery, so it has been held by the supreme and circuit courts. 2 Mason, 270, [Bean v. Smith, Case No. 1,174;] 4 Wash. C. C. 204, 205, [Harrison v. Rowan, Id. 6,143;] [Robinson v. Campbell,] 3 Wheat. [16 U. S.] 221; [U. S. v. Howland,] 4 Wheat. [17 U. S.] 115; [Boyce v. Grundy,] 3 Pet. [28 U. S.] 215. The twenty-third rule only waives a plea or demurrer, and gives leave to set up special matter in the answer. Equity has jurisdiction of all cases of account, though courts of law may have a concurrent jurisdiction, (13 Ves. 278; 13 Price, 721; 2 Caines, Cas. 54; 10 Johns. 587; 1 Eq. Cas. Abr. 131, pl. 12,) as on a devise to pay debts and make distribution, (4 Johns. Ch. 651, 659,) cases of agency, as a supercargo, (Paley, Ag. 58.) So wherever the relation of principal and agent exists, a bill lies for an account, though the agency is gratuitously undertaken. 4 Madd. 198, (374,) 220, (417.) It lies whenever an action may be brought at law to account,— [Fowle v. Lawrason,] 5 Pet. [30 U. S.] 503,— where there are mutual accounts,—Paley, Ag. 55; 1 Petersd. Abr. 98; 2 Show. 301; 1 Holt, N. P. 500, 3 E. C. L. 172. So in all cases of money received for the use of another concurrently with assumpsit, (Kirby, 163, 164,) to have an account allowed, (3 Johns. Ch. 351,) and between landlord and tenant, (1 Schoales & L. 309.) Equity has jurisdiction of all trusts which are variable and flexible, for the execution of which no action lies at law, or where the accounts growing out of it are complicated. 2 Atk. 612; 1 Atk. 128. It is concurrent with law where the trust is executed, but exclusive when it is executory, or there is an open subsisting relation of trust between the parties. A plaintiff must show that the trust is executed, and a balance due, before he can sue at law for money had and received. 1 Holt, N. P. 500; 3 E. C. L. 172, note. So wherever the transaction partakes more of confidence than contract. 5 East, 449. Any person for whose benefit a trust is created, may come into equity. [Russell v. Clark,] 7 Cranch, [11 U. S.] 89. It gives relief on legal titles where deeds are suppressed. Hob. 109. It will continue to exercise its jurisdiction, though courts of law have recently given a remedy. 2 Swanst. 546, 580. Equity will sustain a bill against an attorney who acts for all parties, if he abuses his trust, (1 Schoales & L. 165,) so to compel a solicitor to deliver papers, (1 Russ. 519.) All trusts, though gratuitous and honorary, come within the cognizance of equity, whether they arise from agencies, or in cases of dower, partition, partnership, executors or administrators. 4 Johns. Ch. 651; 17 Johns. 384; 1 Fonbl. 23, note f; 2 Atk. 60; 3 P. Wms. 249; 5 Madd. 9; 3 Mason,

347, [Powell v. Monson & B. Manuf'g Co., Case No. 11,356;] 4 Wash. C. C. 349, [Mayer v. Foulkrod, Case No. 9,341.] In this case the receipt of the money made defendant a trustee to whoever owned it, liable to an account as between principal and agent, the account was demanded and refused, the uncertainty of the arrangements made by defendant, the inaccuracy of defendant's statements, which required correction, the remedy at law being doubtful, attended with great delay if pursued, all which circumstances make it a proper case for equity. In sustaining this bill the rights of no third person will be affected, between the parties equity will consider that as done which defendant undertook to do by an assignment of the judgments; had this been done the plaintiff would have been in the situation of a surety, entitled to the benefit of such judgments, (1 Atk. 133,) or of bail who pays money for his principal, (2 Vern. 608,) though the suretyship was voluntary, as by indorsement, (2 Bin. 382; 2 Madd. 570.) A judgment creditor who pays prior judgment with the intention of becoming the assignee, shall have the benefit of it, as such payment is no extinguishment when equity requires it to be kept alive. 10 Serg. & R. 404; 2 Rawle, 128. As a surety Mr. Baker had all the rights of these judgment creditors against the principal. 1 Johns. Ch. 412; 2 Johns. Ch. 554; 4 Johns. Ch. 121; 1 Gall. 32, [Hunt v. U. S., Case No. 6,900;] 10 Ves. 412; 11 Ves. 22; 14 Ves. 162. It therefore cannot be relied on by defendant that Mr. Baker shall have no benefit from the judgments of which he agreed to procure the assignments; that he was mistaken in point of law is no defence. [Hunt v. Rhodes,] 1 Pet. [26 U. S.] 1, &c. Hence arises the trust, the money paid in April 1819 was to be refunded to Mr. Baker out of the proceeds of the sheriff's sale, this was prevented by the conduct of the defendant, in consequence of which the original trust was revived, and not having been executed according to the agreement, we may enforce it in equity by claiming an account, and payment of the balance. The objection founded on the lapse of time must be pleaded or insisted on in the answer, (2 Madd. Ch. Pr.; 1 Atk. 494; [Prevost v. Gratz,] 6 Wheat. [19 U. S.] 497,) as where the statute of limitations is relied on; its application by analogy is in the discretion of the court, here is no pretence of limitation as defendant has paid 1000 dollars within two years.

Before BALDWIN, Circuit Justice, and HOPKINSON, District Judge.

BALDWIN, Circuit Justice. The first question made in this cause is jurisdiction, which is an important one that ought to be settled to prevent its recurrence in other cases. By the second section of the third article of the constitution, the judicial power of the United States is extended to all cases

in equity [2] between persons therein described; it also authorizes congress to establish inferior courts. In execution of this power circuit courts have been established by the judiciary act of 1798, [1 Stat. 73,] with jurisdiction over all cases in equity, by the eleventh section, but it must be exercised within the limits prescribed by the organic law creating this power, and confined to the cases and subjects defined. [Marbury v. Madison,] 1 Cranch, [5 U. S.] 173; [U. S. v. More,] 3 Cranch, [7 U. S.] 172; [U. S. v. Hudson,] 7 Cranch, [11 U. S.] 32; [Shirras v. Caig,] Id. 44; [U. S. v. Goodwin,] Id. 108; [U. S. v. Gordon,] Id. 287; [Martin v. Hunter,] 1 Wheat. [14 U. S.] 337; [Cohens v. Virginia,] 6 Wheat. [19 U. S.] 395; [M'Clung v. Silliman,] Id. 604; [Osborn v. Bank of U. S.,] 9 Wheat. [22 U. S.] 820; [Williams v. Norris,] 12 Wheat. [25 U. S.] 117; [Montgomery v. Hernandez,] Id. 131; [Connor v. Featherstone,] Id. 203. By the sixteenth section of this act it is declared, that "suits in equity shall not be sustained in either of the courts of the United States, in any case where plain, adequate and complete remedy may be had at law." 1 Story, Const. 59. It has been decided by the supreme court that this section introduced no rule, but was declaratory of the common law. [Boyce v. Grundy,] 3 Pet. [28 U. S.] 215. So this court must take it; but we must give it the effect of a declaratory law, which is to declare it for the past and settle it for the future. Vide 4 Co. Inst. 87; Keb. St. 807; 2 Ruffh. St. 539. "Whereas some question hath of late risen, whether &c; for declaration whereof, and in avoiding such question hereafter, be it enacted and declared, that the common law of this realm is, and always was, and ought to be taken." Such is the form and effect of a statute declaratory of the common law, so taking the sixteenth section it is a proviso, a limitation and exception to the jurisdiction of the court, declaring that the case defined is not a suit in equity, cognizable under the eleventh section.

There can be no doubt of the power of congress to define what should be a case in equity, by declaring what the common law was, which drew the line between the courts of law and equity, nor that when declared, it was obligatory upon all the federal courts, by super-adding the authority of the legislature to that of the common law, so as not to leave the line of separation discretionary with the judges. To give any other effect to a declaratory law than settling a rule and standard for all cases coming within it, would annul it, for if it leaves the common law as it was before, doubtful or discretionary in any way with the court, it is to all intents and purposes a dead letter.

In looking to the seventh amendment to the constitution, proposed by congress at the same session as the judiciary act, their intention is most manifest to connect the sixteenth section with this amendment, which declares that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." By the adoption of this amendment, the people of the states and congress have declared, that the right of jury trial shall depend neither on legislative or judicial discretion. There were two modes in which this right might be impaired: 1. by an organization of courts in such a manner as not to secure it to suitors; 2. by authorizing courts to exercise, or their assumption of equity or admiralty jurisdiction over cases at law; this amendment preserves the right of jury trial, against any infringement by any department of the government, and the sixteenth section prohibits all courts from sustaining a suit in equity where the remedy is complete at law. Connecting this with the ninth section, directing the trial of all issues in fact in the district court to be by jury, with the twelfth, giving the same directions in cases in the circuit court, and the thirteenth in the supreme court, the judiciary act was intended to preserve a right deemed too invaluable and sacred to be left to any other guardianship than the supreme law of the land.

When congress intended to make an exception, it was declared, in the ninth section, "except civil causes of admiralty and maritime jurisdiction;" in the twelfth, "except those of equity, and of admiralty and maritime jurisdiction;" in the thirteenth, the provision extended only to "actions at law." It thus became necessary to define what were "suits in equity so excepted;" this was done by the sixteenth section, so that to bring a case within the exception, it must be, 1. a suit of equity jurisdiction; 2. a suit in which a complete remedy cannot be had at law, for if such remedy could be had, then it was a "suit at common law," within the seventh amendment.

This view of the constitution and law is the same as taken by the supreme court. "It is well known that in civil cases in courts of equity and admiralty juries do not intervene, and that courts of equity use the trial by jury only in extraordinary cases, to inform the conscience of the court; when, therefore, we find the amendment requires that the right of trial by jury shall be preserved 'in suits at common law,' the natural conclusion is, that the distinction was present in the minds of the framers of the amendment. By common law they meant what the constitution denominated in the third article, 'law,' not merely suits which the common law recognises among its old and settled proceedings, but suits in which legal rights were to be determined and ascertained, in contradistinction to those where equitable rights alone were recognised, and equitable remedies were ad-

---

[2] [See also, Lorman v. Clarke, Case No. 8,516; Hubbard v. Northern R. Co., Id. 6,818; In re Meador, Id. 9,375.]

ministered, or where, as in the admiralty, a mixture of public law, and of maritime law and equity, was often found in the same suit." Parsons v. Bedford, 3 Pet. [28 U. S.] 446, 447. Taking the amendment, the law, and their construction as the one law, it follows, that whenever a court of law is competent to take cognizance of a right, and has power to proceed to a final judgment, which affords a remedy, plain, adequate and complete, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right of trial by jury. If the right is only an equitable one, or, if legal, the remedy is only equitable, or both legal and equitable, partaking of the character of both, and a court of law is unable to afford a remedy according to its old and settled proceedings, commensurate with the right, the suit for its assertion may be in equity. This distinction is strongly illustrated in a case on the occupying claimant law of Ohio, directing compensation to be made for improvements on land recovered by ejectment, to be ascertained by commissioners appointed by the court which tried the cause. The supreme court held the law valid so far as respected the right of compensation, but unconstitutional as respected the mode of ascertainment, inasmuch as the circuit courts of the United States, in a suit at law, must submit every question of fact to a jury. Bank of Hamilton v. Dudley, 2 Pet. [27 U. S.] 492, 525.

The tests of the relative jurisdiction over suits at law and equity are, 1. the subject matter, 2. the relief, 3. its application, 4. the competency of a court of law to afford it; their application is not to be regulated by the decision of state or foreign courts, where their judicial system is organized on principles wholly inconsistent with a federal government of limited jurisdiction in all its departments. All the courts of the United States are of limited jurisdiction, which, whether appellate or original, must be exercised in the mode pointed out by the constitution, an act of congress directing a different mode is void. [Marbury v. Madison,] 1 Cranch, [5 U. S.] 175. Their jurisdiction is special, limited to certain cases, the facts necessary to its exercise must appear on the record, or their judgment is erroneous, as in inferior courts in England,—1 Saund. 174; 1 Ves. Sr. 204,—though their proceedings are not nullities, because their jurisdiction does not appear,—[Kempe v. Kennedy,] 5 Cranch, [9 U. S.] 184, 185. An enumeration of cases on which the federal courts may act, is an exclusion of all others. [Marbury v. Madison,] 1 Cranch, [5 U. S.] 174; [U. S. v. More,] 3 Cranch, [7 U. S.] 172; [Durousseau v. U. S.,] 6 Cranch, [10 U. S.] 313; [U. S. v. Hudson,] 7 Cranch, [11 U. S.] 32; [M'Clung v. Silliman,] 6 Wheat. [19 U. S.] 603; [Osborn v. Bank of U. S.,] 9 Wheat. [22 U. S.] 820; [Montgomery v. Hernandez,] 12 Wheat. [25 U. S.] 132. A legislative exception from

its appellate constitutional power is implied from a legislative affirmative description of the powers of the court. [Durousseau v. U. S.,] 6 Cranch, [10 U. S.] 314. If the law describes the power in general terms, embracing the case, without making any exception, it will be liberally construed and acted on. [Wilson v. Mason,] 1 Cranch, [5 U. S.] 91; [Cohens v. Virginia,] 6 Wheat. [19 U. S.] 400. But a strict construction is adopted in other cases. [Wiscart v. Dauchy,] 3 Dall. [3 U. S.] 324; [U. S. v. Goodwin,] 7 Cranch, [11 U. S.] 110. These are the rules on which the supreme court acts, whether on an appeal, writ of error, or a certificate of division. [Cohens v. Virginia,] 6 Wheat. [19 U. S.] 363; [U. S. v. Daniel,] Id. 547; [Wayman v. Southard,] 10 Wheat. [23 U. S.] 20; [Montgomery v. Hernandez,] 12 Wheat. [25 U. S.] 132. So as to the appellate jurisdiction of the circuit court, the time, the manner of its exercise, and its process must be subject to the absolute legislative control of congress. [Martin v. Hunter,] 1 Wheat. [14 U. S.] 349; S. P., [The Caroline v. U. S.,] 7 Cranch, [11 U. S.] 500; [Patterson v. U. S.,] 2 Wheat. [15 U. S.] 225. It cannot have been intended to leave the original equity jurisdiction, subject to different rules, or capable of being exercised in opposition to them.

State courts are organized on contrary principles; the supreme court of this state has all the powers of the court of exchequer, common pleas and king's bench. 1 Dall. Laws, 180. So has the supreme court of New York. 6 Johns. 280. In England the "king hath delegated his whole judicial power to the judges," "all matters of judicature according to his laws." 4 Co. Inst. 70, 74; St. 20 Edw. III. c. 1; 1 Ruffh. St. 246. Hence the jurisdiction of the courts was general and supreme over all matters subject to their respective cognizances. That of the court of chancery proceeding secundum equum et bonum, was original, not delegated. 4 Co. Inst. 73, 74. It is difficult to discover its origin. Mitf. Eq. Pl. 1. It can be traced to no act of parliament, but had existed time out of mind, it had become very extensive, and being extraordinary, was governed by no certain rules. 4 Co. Inst. 89. It extends to all cases not taken from it, and transferred to some other court of equity. Professing to act only in aid of the law in curing its defects, chancery adopted a general rule, not to interfere where the remedy at law was complete, but have not always adhered to it; the only test of jurisdiction being usage, they would not suffer it to be arrested because courts of common law gave the same relief. 3 Brown, Ch. 73, 224; 2 Caines, Cas. 40; 5 Ves. 784. Repeated attempts were made by the commons of England, to define and limit this jurisdiction "to such cases as have no remedy by the common law," but were defeated by the king's answer, "the usages heretofore shall stand so as the king's

royalty be saved." 4 Co. Inst. 82, 83. Chancery has thus been left to define its own jurisdiction, by its own usages and precedents, never giving up what it had once exercised, and struggling for its extension over cases cognisable at law; courts of law too, judging likewise of their own jurisdiction, have in modern times assumed the powers of equity, so that from their respective decisions it has become difficult to draw the line between them. 2 Schoales & L. 630; 6 Ves. 86; 7 Ves. 18; 2 Eq. Cas. Abr. 382; Prec. Ch. 111, 244; 4 Brown, Ch. 296; 2 Ves. Jr. 122; 7 Mod. 43; 2 Ld. Raym. 785; 3 Durn. & E. [Term R.] 53, 151.

To avoid the confusion arising from this conflicting struggle for jurisdiction, between the different courts of common law and equity, congress vested the powers of both courts in the circuit courts, and did what the commons of England could not effect, prohibited their exercise of equity powers, in cases where the legal remedy was complete. Usage therefore is no test of jurisdiction in the federal courts, they cannot act (in the language of Buller, Justice,) as the lord chancellor does "in the plentitude of his power," (3 Durn. & E. [Term R.] 161,) but must proceed by the line drawn by the constitution, the law and the supreme court. It is no excuse for disregarding it, because courts of equity elsewhere act on another rule; as a matter of constitutional right, a defendant is entitled to a jury trial on an issue of fact in a suit at common law, and to his oath in his answer to a bill in equity, of which he cannot be deprived at the option of a plaintiff. 6 Ves. 184. It is enough for the purposes of justice, that one tribunal is open to every party, competent to give a remedy for every wrong; he ought to be compelled to resort to that which is appropriate to his case, and ask his remedy with the incidents attached to it. This court has been organised on this principle, with limited powers, it cannot sustain a suit at law on an equitable right only, adjudge a remedy appropriate only to equity, or sustain a suit in equity on a mere legal right, for which the law affords a complete remedy. [Graves v. Boston Marine Ins. Co.,] 2 Cranch, [6 U. S.] 444. This has been made our duty by a more imperative and safe rule than the usage or discretion of a chancellor.

A case however may be sustained in equity on a legal right, if the object and nature of the remedy sought are equitable. 10 Ves. 14. The rights and rules of property are the same at law as in equity, the remedy for their violation is different; if damages are sought for a breach of contract, it must be by a suit at law, if a specific execution is asked, it must be in equity, so to annul and set it aside for fraud. [Hepburn v. Dunlop,] 1 Wheat. [14 U. S.] 197. The right may be clear at law, but as a court of law cannot by assuming cognizance of the conscience act on the person of a party,—1 Ves. Sr. 446,

—if the remedy is doubtful, difficult, not adequate to the object, not so complete as in equity,—[Osborn v. Bank of U. S.,] 9 Wheat. [22 U. S.] 842,—not so efficient and practicable to the ends of justice and its prompt administration, the sixteenth section does not preclude the jurisdiction of equity,—[Boyce v. Grundy,] 3 Pet. [28 U. S.] 215. Nor where it is necessary to bring before the court, persons who are interested or actors in the case, though not parties to the suit, and cannot be made parties to a suit at law,—[Osborn v. Bank of U. S.,] 9 Wheat. [22 U. S.] 843, 844;—where the competency of law falls short of the equum et bonum of the case,—4 Wash. C. C. 352; [Mayer v. Foulkrod, Case No. 9,341;]—where there is some difference in the remedy, and some equitable circumstances calling for its application, [Smith v. M'Iver,] 9 Wheat. [22 U. S.] 534, 535. But there must be some head or branch of equity jurisdiction under which the case comes, independently of the remedy being more complete. 4 Wash. C. C. 206; [Harrison v. Rowan, Case No. 6,143;] [Herbert v. Wren,] 7 Cranch, [11 U. S.] 376; [Osborn v. Bank of U. S.,] 9 Wheat. [22 U. S.] 842; 1 Ves. Jr. 423. In such cases equity acts to supply the defects of the law as to the remedy to which the party is entitled, and will administer its own appropriate relief by a final decree on the whole merits because cognizance cannot be effectually taken at law. 1 Schoales & L. 205.

When the jurisdiction of equity attaches, the extent of its exercise depends on the nature and object of the suit, if required only as preliminary, or auxiliary to a legal remedy, its power ceases when that is effected by the aid of equity; a subpoena in equity does not operate like a capias from the king's bench with a clause of ac etiam, or a quo minus in the exchequer, to draw from law, the cognizance of legal rights or legal remedies, when an auxiliary relief was alone called for,—3 Conn. 140, 170,—or be abused as a pretext for bringing causes proper for a court of law into equity,—[Russell v. Clark,] 7 Cranch, [11 U. S.] 89. A bill for discovery, for instance, must present a case of defect of proof,—1 Wash. C. C. 129, [Carson v. Jennings, Case No. 2,464,]—and relief must be an incident or consequence of the discovery, or the party after obtaining it will be sent to law for his final remedy,—3 P. Wms. 150; 2 Brown, Ch. 61; 1 Brown, Ch. 194; 6 Ves. 689; 3 Conn. 140, 170. Equity will not render a final decree in a case of fraud, unless the object of the bill is to obtain something besides mere compensation,—[Boyce v. Grundy,] 3 Pet. [28 U. S.] 221,—nor on an injunction, unless the object is to arrest the injury and prevent the wrong,—[Osborn v. Bank of U. S.,] 9 Wheat. [22 U. S.] 845,—or on a bill for an account, unless the justice of the case appears on the account,—1 Schoales & L. 308, 309. If the question of discovery, fraud, injunction, or account, in-

volves the essence and merits of the whole case, as to right and remedy, and the court is competent to decide on the one and administer the other, it will, when put in possession of the materials to enable it to make a final decree, proceed to make it, to avoid multiplicity of suits. 3 Atk. 263; Amb. 541; 10 Johns. 596. So where a contract is made by fraud and imposition or the like, equity gives relief, which the law cannot, and having thus possession of the principal question, makes a final decree on the question and equity of the whole case. [Hepburn v. Dunlop.] 1 Wheat. [14 U. S.] 197. The court being once rightly in possession of the whole cause, will determine the controversy, although in its progress it may decree on a matter which was cognizable at law. [Cathcart v. Robinson,] 5 Pet. [30 U. S.] 278; [Wilson v. Mason,] 1 Cranch, [5 U. S.] 89. But if the answer to a bill of discovery confesses nothing, furnishes no evidence in favour of a plaintiff's claim, and denies the whole equity of the bill, this ground of jurisdiction is totally withdrawn from the case. [Russell v. Clark,] 7 Cranch, [11 U. S.] 89, 90. The rule resulting from these cases is plain and intelligible, the principal question in a cause is the cause itself; a court of equity once having cognizance of it, would not send the party back to law to settle its incidents; nor if the incidents only are before them, would they take the substance of the controversy from law.

It was a well established rule of chancery before the American revolution, to sustain a bill for discovery where they could not give the relief prayed for; if the plaintiff was entitled to a discovery, and not to relief, the defendant must answer the former, and might demur to the latter, but a general demurrer was uniformly overruled, if the plaintiff was entitled to an answer to either. Mitf. Eq. Pl. 148; 1 Ves. Sr. 248: 2 Caines, Cas. 176; 10 Ves. 553; 2 Brown, Ch. 281; 8 Ves. 2; 2 Atk. 44, 157, 284, 289; 2 Ves. Sr. 357. This rule was adopted in the United States and yet prevails. 2 Caines. Cas. 177; 1 Johns. Cas. 434, 435. It was changed in England in 1787, 1788, by Lord Thurlow, and a new one introduced which has been followed since. That a demurrer if good to the relief, is good to the discovery, if the discovery is sought for the purpose of the relief, (1 Madd. Ch. Pr. 216; 10 Ves. 553; 2 Brown, Ch. 280, 319;) a plaintiff is not entitled to discovery, if he goes on to pray relief to which he is not entitled, and a general demurrer is good to both, (4 Brown, Ch. 480; 2 Ves. Jr. 517; 3 Ves. 7; 6 Ves. 63; 11 Ves. 510.) The only reason given for so important a change in chancery proceedings is, that it was a hardship on a defendant to pay the expense of a long copy, when there was only a right to a discovery, and not be able to avoid it by a general demurrer. 2 Brown. Ch. 281.

Trivial as the reasons are, the rule affects the jurisdiction of the court most material-

ly; if a general demurrer is allowed they cannot proceed, if overruled they can act on the whole case, thus doing away the distinction between incidental and final relief, and the cases where the principal question is before them, the essence and substance of the case, or only its incidents or an incidental question. A similar reason has led to an assumption of equity jurisdiction in account, wherever the relation of principal and agent exists, in the case cited by the plaintiff's counsel, because a "plaintiff can only learn from the discovery of the defendant how they have acted in the execution of their agency; and it would be most unreasonable that he should pay them for that discovery if it turned out that they had abused his confidence: yet such must be the case if a bill for relief did not lie." 4 Madd. 199, (Amer. Ed.) 220; Id. (Eng. Ed.) 376, 416; 1 Madd. Ch. Pr. 217. It is an old rule of chancery that plaintiff pays the costs of a bill for discovery though defendant resists it, (Bunb. 124; 1 Atk. 286; 4 Ves. 746,) though Justice Buller ruled otherwise, (1 Ves. Jr. 423;) yet it was never made a pretext for extending its jurisdiction till 1819. As costs are discretionary in equity, (1 Ch. Cas. 106; 1 Eq. Cas. Abr. 125; 2 Atk. 111; 1 Madd. 190.) the justice of the case could have been better answered by altering the rule as to the costs, than to make jurisdiction and final relief a mere incident to costs. In the rule of Lord Thurlow there is still less reason, for though the defendant pays the costs of a copy in the first instance. he charges it in his bill against the plaintiff. Ch. Cas. 106. Such are the pretexts for the assumption of jurisdiction when its extent and exercise depend on mere discretion, than which there can be no better reason for a statutory definition. Be the rule however as it may in England, or founded on solid or trivial reasons, it cannot be adopted by the courts of the United States; a check has wisely been provided against the assumption of equity jurisdiction by any new rule in English courts since the Revolution, (vide [Cathcart v. Robinson,] 5 Pet. [30 U. S.] 280.) especially those which depend on the discretionary power of the court over costs. No such principle has been sanctioned by the supreme court in the cases cited by plaintiff's counsel, they have decided that the acts of congress distinguishing cases at law from those in equity, refer to the principles settled in England before their passage. and not to the practice in the state courts. [Robinson v. Campbell,] 3 Wheat. [16 U. S.] 221: 4 Wheat. [17 U. S.] 115; [Fullerton v. Bank of U. S.,] 1 Pet. [26 U. S.] 613. In the words of Judge Washington. the judiciary act adopts the long established principles of the court of chancery on the subject of equity jurisdiction. 4 Wash. C. C. 205. [Harrison v. Rowan, Case No. 6,143;] 4 Wash. C. C. 354. [Mayer v. Foulkrod, Id. 9,341.] It follows that new

rules subversive of established principles and practice are excluded. Vide [Vattier v. Hinde,] 7 Pet. [32 U. S.] 274.

It is contended by plaintiff's counsel, that the want of jurisdiction on the ground of there being a remedy at law ought to be by demurrer or plea, and comes too late after an answer. As a demurrer admits the facts of the bill, and can introduce no new ones, it presents only the question whether defendant shall answer it. Mitf. Eq. Pl. 86, 87. It denies the equity of the bill, as a demurrer to a declaration denies the cause of action, but at law the defendant may move in arrest of judgment, or assign error for the same cause, as the defect is not cured by verdict or judgment. [Tiernan v. Jackson,] 5 Pet. [30 U. S.] 585. There is no reason why a demurrer should be necessary in equity more than at law. It would be a hardship to compel the defendant in this case to admit the fact stated in the bill, that he undertook to procure an assignment of certain judgments to the plaintiffs, as the jurisdiction and relief might be consequent upon it; whereas, by denying it in his answer, the plaintiff would be out of court if he did not prove that fact. The difference between a demurrer at law and in equity is this, a judgment on a demurrer at law, if against a defendant, is final and peremptory, he puts it in at his risk, and the judgment is a perpetual bar; if a demurrer is overruled in equity, the defendant must answer over, but may insist on the same matter in his answer. (2 Atk. 284; 3 P. Wms. 94; 2 Ves. Sr. 492,) being the same as a respondeas ouster at law, (1 Caines. Cas. 7.) If the demurrer is allowed in equity, it is a bar and goes to the merits. 1 Atk. 544. In general if a demurrer would hold to a bill, the court will not grant relief though the defendant answers. 6 Ves. 686; 2 Jac. & W. 151. It will be done in some cases, but they are rare. Mitf. Eq. Pl. 87, (New York Ed.) The ground of a demurrer is, that the bill does not disclose a case which entitles the plaintiff to the relief prayed for; if the bill does not state or the plaintiff does not make out such case at the hearing, or on an issue, or by the answer, he cannot have a decree; the want of equity in the bill is fatal to the plaintiff's relief; although a demurrer or plea might have availed the defendant, he is not precluded by answering, and the precedents to this point are numerous. 3 P. Wms. 256, 257; 1 Ch. Cas. 144, 147; 2 Brown, Ch. 338, 340, 519; 4 Brown, Ch. 180, 198; 2 Ves. Jr. 56, 60; Comyn. 612; 1 Brown, Ch. 29, 201; 1 Atk. 451; 3 P. Wms. 94; 2 Ves. Sr. 493. After plea overruled he may answer to the same matter, or set it up in a second answer after the first has been overruled. 2 Ves. Sr. 492. The rare cases referred to in Mitford are North v. Earl & Countess of Stafford. 3 P. Wms. 148, 150, where the lord chancellor allowed a demurrer, but said he would have relieved on

the hearing if there had been no demurrer; this dictum applied to the particular case, the defendant had demurred to the relief and not to the discovery, and the plaintiff was at liberty to except, to amend his bill, and force defendant to discover. The others were the Rector of Sherington's Case, and the Case of Pickering, referred to in a note of the reporter in Brewster v. Kidgell, 12 Mod. 171, in which it is said, that the difference between granting and refusing relief in the exchequer depended on there being a demurrer. As the case of Brewster v. Kidgell is reported in Holt, 669; Carth. 438; Comb. 424, 466; 5 Mod. 369, 374; 1 Salk. 198; 2 Salk. 615; 3 Salk. 340; 1 Ld. Raym. 317, 322,—without noticing this point, little if any weight is due to this note of the reporter as evidence of a general rule, and his statement of the cases is too imperfect to ascertain their circumstances.

The counsel of the plaintiff relies upon a rule laid down by Lord Chief Baron Gilbert, that after answering, a defendant cannot object that the plaintiff's remedy is at law; this rule however appears by the text and cases cited, to be applied to the cases of bills filed for relief on deeds, bonds, or other papers, which have been lost or destroyed. Gilb. Ch. 50, 51, 52; 2 Mod. 173; 1 Ch. Cas. 11, 231; 1 Vern. 59, 180, 247. These bills are of two descriptions. 1. Such as pray only for relief, auxiliary to a final remedy at law, by a decree for a discovery and re-execution of the deed. 2. Such as, in addition, pray for payment of the money due; in the former an affidavit of the loss or destruction is necessary, in the latter not. Mitf. Eq. Pl. 42, 43. The reason of the difference is this, that if the matter of the bill is within the jurisdiction of the court, the plaintiff need not make affidavit that he hath not the writings, but if it be to give the court jurisdiction then he must. 2 Eq. Cas. Abr. 13, pl. 1; 2 Freem. 71, pl. 83. As a plaintiff cannot recover on a lost deed at law, it is a clear case for equity to supply the defect in aid of the law; when this is done by a decree for discovery and re-execution, the power of equity is functus officio, for then the remedy is complete at law to enforce payment, and a demurrer admitting the loss admits the jurisdiction to supply the defect. But as a decree for payment takes the final remedy from law to equity, there must be an affidavit to give jurisdiction for payment; if not made and the defendant denies the deed, he may demur, because he has a right to have it tried by a jury. If the deed is confessed in the answer, he cannot demur to the relief, as it is iniquitous to afterwards litigate it on an issue at law of non est factum, and he has nothing to do but to pay the money; so if he denies the deed without demurring, and it is proved by two witnesses. Gilb. Ch. 50, 51, 52, 219, 220; Mitf. Eq. Pl. 42. These principles are supported by the adjudged cases cited by Gilbert and

2 P. Wms. 541; 3 Atk. 17, 132; 3 Anstr. 859, 861; they apply however only to this class of cases, which are governed by appropriate rules, not interfering with those adopted in ordinary cases. The nature of a bill on a lost deed necessarily makes it an exception to the general rule, of which this case is an illustration; for here it is admitted and cannot be controverted, that a demurrer would be good if the plaintiff has a complete remedy at law, (3 Brown, Parl. Cas. 525,) whereas it would be overruled, if this was a bill on a lost bond with an affidavit annexed. In this case, as the answer admits or discloses nothing, which gives any jurisdiction independently of the allegations of the bill, the defendant is not put to his demurrer; nor is the case in the bill one in which the plaintiff was bound to make affidavit, in order to give jurisdiction to equity, or where any affidavit if made to any fact set forth, would authorize a transfer of the final remedy from a court of law, if it was a case for law without such affidavit. It has been thought proper to notice the rule in Gilbert the more particularly, as it was much pressed in the argument, and was the basis of the opinion of the judges in Ludlow v. Simonds, referred to hereafter. Admitting this rule as an exception in peculiar cases, we cannot hesitate in giving our opinion, that the established general rule of chancery is as laid down by Lord Eldon; "if you could have demurred to the bill, the court will not make a decree at the hearing;" the exception is, "if the defendant has the vouchers, so that the plaintiff cannot go on at law, and then the observation applies, that wanting discovery, the court gives relief particularly in matters of account." 6 Ves. 686. Here the plaintiff asks for final relief, which must be denied him unless at the hearing he has made out a case of equity jurisdiction. It is next contended that this objection must be made by a plea to the jurisdiction of the court.

A plea differs from a demurrer in this, the latter is on the ground that the case is not cognizable in any court of equity, and can set up no new matter; a plea must set up matter not in the bill, some new fact as a reason why the bill should be delayed, dismissed, or not answered, or it will be overruled. Mitf. Eq. Pl. 177, 179; Beames, 2, 7; 2 Madd. (Amer. Ed.) 346. A plea to the jurisdiction does not deny the plaintiff's right, or that it is not a matter proper for the cognizance of equity, but that the court of chancery is not the proper one to decide it. Mitf. Eq. Pl. 180; Beames, 57. It admits the case to be of equity jurisdiction, but asserts that some other court of equity can afford the remedy. This must be shown by matter set up in the plea, because the court of chancery being one of general jurisdiction in equity, an exception must be made out by the party who claims an exemption in order to arrest it. Mitf. Eq. Pl. 183; Beames, 57, 91; 1 Vern. 59; 2 Vern. 483; 1 Ves. Sr. 264. But if no circumstance can give jurisdiction to the court of chancery, no plea is necessary, a demurrer is good. The objection that the case belongs to another court of equity cannot be taken by demurrer. It must be by plea, (1 Atk. 544; Mitf. Eq. Pl. 123, 124; Beames, 100, 101; 1 Saund. 74,) showing what court has cognizance of the case, that it is a court of equity and can give the plaintiff a remedy, (1 Vern. 59; 1 Dickens, 129; 3 Brown, Ch. 301; 1 Ves. Sr. 203; 2 Ves. Sr. 357.) It is in the nature of a plea in abatement at law which cannot be put in after general imparlance, or received when it does not give the plaintiff a better writ. 1 Com. Dig. 151, (146, 147;) 1 P. Wms. 477; Beames, 92, 93; 1 Ves. Sr. 203, 204. The analogy however does not run throughout. Lord Hardwicke says, in Penn v. Baltimore, "First the point of jurisdiction ought in order to be considered: and though it comes late I am not unwilling to consider it. To be sure a plea to the jurisdiction must be offered in the first instance, and put in primo die; and answering submits to the jurisdiction; much more when there is a proceeding to a hearing on the merits, which would be conclusive at common law: yet a court of equity which can exercise a more liberal discretion than common law courts, if a plain defect of jurisdiction appears at the hearing will no more make a decree than where a plain want of equity appears." 1 Ves. Sr. 446, S. P., 3 Atk. 589; Beames, 56.

We have been much pressed with a contrary principle laid down by high authority, in Ludlow v. Simond, 2 Caines, Cas. 40, 51, 56; 2 Johns. Ch. 369; 4 Johns. Ch. 290. But it is not supported by the cases referred to, and is much shaken by subsequent opinions of the same judges who asserted it. Vide 9 Johns. 493, by Mr. Justice Thompson, who remarked, "This objection ought not to be very favourably received in this stage of the cause," by Chief Justice Kent, who does not notice this point in his opinion, (9 Johns. 505,) and by Judge Spencer, who had previously given his opinion, that the bill ought to be dismissed, (9 Johns. 504.) In 2 Johns. Ch. 369, Chancellor Kent rests his opinion solely on 2 Caines, Cas. 40, 56, in 4 Johns. Ch. 290, he repeats the rule as a general one, referring to 1 Johns. Cas. 434; 2 Johns. Cas. 431; 10 Johns. 595, 596,—in neither of which cases is the rule referred to laid down by any of the judges. In Ludlow v. Simond, Kent, J., quoted 1 Atk. 128; 1 Ves. Sr. 331; 3 Brown, Parl. Cas. 525; Mitford passim; Gilb. Ch. 51, 53, 219, 221; 1 Ves. Sr. 446,[3] neither of which support the position; hence he omits any reference to these cases in his two subsequent opinions in

---

[3] [See note at end of case.]

chancery, relying on the rule as one established in New York, by the case of Ludlow v. Simond which was decided in 1805.

In LeRoy v. Servis, Judge Benson, in delivering the opinion of the court of errors in 1801, laid down the rule of chancery to be, "For it is to be remarked that a defendant does not waive or forego a single advantage as to the merits, or the point whether the plaintiff has equity, by not demurring. He may equally insist on the same matter by the answer, which he may have done by the demurrer; and if he should omit them in the answer, he may still avail himself in argument on the final hearing of the case. 1 Caines, Cas. 1, 7; 2 Caines, Cas. 176, 182. Decisive as are the terms of this opinion, it was overlooked in 1805, and a local rule to the contrary laid down, which we cannot follow when it is in opposition to the established course of equity.

The true rule as laid down by Judge Benson is analogous to proceedings at law, where an objection is made that the plaintiff's remedy is in equity. In Pasley v. Freeman, 3 Durn. & E. [Term R.] 53, the question whether an action founded on a fraud, could be sustained at law, was decided on a motion for a new trial; so in Read v. Brookman, whether a plaintiff could recover on a lost deed, was decided on a demurrer to the declaration for want of a profert. 3 Durn. & E. [Term R.] 152, 157. Surely then a court of equity, which exercises a more liberal discretion in pleading than courts of law, will not hold a defendant to stricter rules on the question, whether the plaintiff has a remedy at law. In the courts of the United States, an objection to the jurisdiction of the court, or to the want of equity in the bill, has never been overruled for the want of a demurrer or plea, but has been sustained wherever the defect appears by the bill, the answer, or the proofs in the cause; it may be made on a motion to dismiss the bill,—1 Pet. C. C. 363, 383, [Andrews v. Solomon, Case No. 378; Thompson v. Tod, Id. 13,978;] [Duncan v. Walker,] 2 Dall. [2 U. S.] 205,—though the defendant answer the merits without taking this objection,—[Graves v. Boston Marine Ins. Co.,] 2 Cranch, [6 U. S.] 419, 444. So after a decree pro confesso, a reference and report of a master. [Fowle v. Lawrason,] 5 Pet. [30 U. S.] 496, 504, S. P.; [Massie v. Watts,] 6 Cranch, [10 U. S.] 158; [Russell v. Clark,] 7 Cranch, [11 U. S.] 75, 89; [Herbert v. Wren,] Id. 376; [Hepburn v. Dunlop,] 1 Wheat. [14 U. S.] 197; [Cameron v. M'Roberts,] 3 Wheat. [16 U. S.] 591; [U. S. v. Howland,] 4 Wheat. [17 U. S.] 115; [Osborn v. Bank of U. S.,] 9 Wheat. [22 U. S.] 739, 842; [Boyce v. Grundy,] 3 Pet. [28 U. S.] 211, 215. When urged in argument, the objection "is considered in the nature of a demurrer to the bill for want of equity. 1 Mason, 270; [Bullard v. Bell, Case No. 2,121.] So a decree will be reversed for the want of proper parties, after a hearing on the merits in the cir-

cuit court. [Wilcox v. Plummer,] 4 Pet. [29 U. S.] 180; [Caldwell v. Taggart,] Id. 202. We must therefore take the law of equity to be settled, that a defendant may, at any stage of the cause, rely on the want of equity in the bill, on the ground that the plaintiff has a complete remedy at law. The nature of this case, which is one very near the dividing line between law and equity, required us to examine this question thoroughly, in order to come to a satisfactory conclusion on which side of the line it comes, as well as to settle the general rules of equity jurisdiction, so far as it could be done by this court. The labour of making up a detailed opinion is our own, the tax upon the time of the bar in listening to its delivery, is voluntary and comparatively small. It is enough for us, that the course we take is from the impulse of duty, of this we must be the judges.

The objects of the bill are threefold, first, discovery, second, account, third, the execution of a trust. They will be considered distinctly.

1. Discovery. From the bill it appears, that the plaintiff's testator had received from the defendant, two accounts of the receipt and disbursement of the 2800 dollars put into his hands, also of the amount of the judgments against Eckert, the sum bid at sheriff's sale, the purchase by defendant, the application of the purchase money, and that defendant had communicated his proceedings by letters received by the testator, which were read at the hearing. Thus far plaintiff having previous knowledge of all material facts had no need of a discovery. The only matters disclosed in the answer, of which the plaintiff by his bill did not appear to have both knowledge and proof, were mostly of detail of what was in the accounts rendered, or would appear on the records referred to therein, in no way affecting the substance of the plaintiff's case in his bill. As the plaintiff had equal means of resorting to public records for information as the defendant, their contents are not a proper subject for a bill of discovery, as we decided in Ross v. Gibson [Case No. 12,074] at the last term. The merits of the plaintiff's claim were not changed by the answer, unless on matters merely auxiliary, or collateral to the princ. pal question of relief, the answer has removed no legal impediment, or brought out any matters peculiarly within the knowledge of the defendant, so as to present a case of equity cognizance of any matter not cognizable at law; admitting the contrary, still equity can go no further than to supply the defects of law under this head. The discovery sought and made does not carry relief in equity as an incident, so as to give the court power to decree on the whole case, and take the controversy from law to equity, but leaves all questions as to a final remedy as open as before the answer. Vide [Fowle v. Lawrason,] 5 Pet. [30 U. S.] 503; [Russell v.

Clark,] 7 Cranch, [11 U. S.] 89; Mitf. Eq. Pl. 27, 42.

2. Account. The bill does not aver any refusal to account till 1829. On the contrary it admits that one was rendered in April 1819 and another two years before the death of the testator, exhibiting a balance due by defendant of 191 dollars and its appropriation, to which no objections were made as to the items, or the application of the money before the filing of the bill, nor is any fraud suggested. It is a good plea to an action at law for an account, that the defendant had accounted before suit brought, to the person from whom money had been received, or to the person to whom he was bound to account or directed to pay it, (Bull. N. P. 127,) or that the money had been received for an object which had been accomplished, (1 Vern. 95, 136, 208,) or that he never was the plaintiff's bailiff or receiver to render an account, (1 Com. Dig. 189, E. 3, 4, 5.) The object of the suit being to compel the settlement of the account, the plea of fully accounted is good at law,—4 Serg. & R. 44; 3 Wils. 113,—and a stated account is a good plea in equity,—[Chappedelaine v. Dechenaux,] 4 Cranch, [8 U. S.] 309; 4 Desaus. Eq. 175; 1 Atk. 1; 2 Atk. 1; Mitf. Eq. Pl. 210, 211. If plaintiff has agreed to the account his only remedy is at law for the balance; unless there is some legal impediment, equity will not interfere when the sum is certain. 1 Ves. Sr. 160, 163; 6 Ves. 141. In this case the account must be considered as settled by its long retention, without objection made in a reasonable time. 2 Vern. 276; 2 Ves. Sr. 239. Though not signed by the party it is a stated account, if it is in writing and shows a balance or that there is none. Mitf. Eq. Pl. 21; 2 Atk. 251, 399. The burthen of showing errors in such an account, is on the person who receives it without objections. [Freeland v. Heron,] 7 Cranch, [11 U. S.] 151. A settled account can be opened only for fraud or errors specified, and which are palpable or clearly proved. 2 Atk. 189; [Chappedelaine v. Dechenaux,] 4 Cranch, [8 U. S.] 309; 1 Ch. Cas. 299; 1 Vern. 180; 2 Atk. 119; 9 Ves. 265; 2 Johns. Ch. 216. It can only be surcharged or falsified by the plaintiff,—[Perkins v. Hart,] 11 Wheat. [24 U. S.] 256,—and is not affected by being introduced into a subsequent account,—[Chappedelaine v. Dechenaux,] 4 Cranch, [8 U. S.] 316. Long acquiescence in an account makes it a settled one. Stale demands are not favoured in equity when the party acquiesces for a length of time and sleeps on his rights. 1 Jac. & W. 59, 62; 2 Jac. & W. 152; 2 Schoales & L. 627. Conscience, good faith and reasonable diligence are required to call the powers of equity into action. 6 Johns. Ch. 369; Amb. 645; 3 Brown, Ch. 640; 2 Ves. Jr. 583. A trustee's account with an infant cannot be opened after eleven years' acquiescence in a settlement, unless by falsifying an item. 2 Brown, Ch. 62. An account

is barred in eleven years. 2 Johns. Ch. 437; 3 Johns. Ch. 586. The bar from lapse of time is a conclusion from acquiescence, an inference from facts, which need not be set up by demurrer, answer or plea, but may be suggested at the hearing. 3 Brown, Ch. 646; 4 Brown, Ch. 268; 2 Ves. Jr. 87, 572, 582; 2 Schoales & L. 637. There is no fixed time when it operates in equity. It is applied by analogy to the statute of limitation,—[Thomas v. Brockenbrough,] 10 Wheat. [23 U. S.] 149; [Elmendorf v. Taylor,] Id. 168; [Willison v. Watkins,] 3 Pet. [28 U. S.] 52, 53,—or rather in obedience to them as Lord Redesdale, expresses it,—2 Schoales & L. 629, 636; 2 Jac. & W. 191. The effect however is the same as at law. 7 Johns. Ch. 122. In this state six years bars an action of account. 1 Dall. Laws, 95, 96. An infant is barred from an account of rents and profits, unless brought in six years after he comes of age. Prec. Ch. 518; 7 Johns. Ch. 113, 114. And the same rule applies to an account of all trusts, which are not the peculiar creatures of a court of equity. 7 Johns. Ch. 114; [Willison v. Watkins,] 3 Pet. [28 U. S.] 52; 2 Jac. & W. 147, 152, 191; [Peyton v. Stith,] 5 Pet. [30 U. S.] 491. We think this case comes within the spirit of all these decisions. The act of limitations has twice run over the plaintiff's claim, and being barred at law, we can see no equitable circumstance to take it out of the rule; the account must therefore be considered both at law and in equity as closed, so far as respects the receipt of the 2800 dollars.

The next ground for an account is an allegation in the bill, that the defendant undertook to procure an assignment of certain judgments against Eckert, to be made to plaintiff's testator; this is explicitly denied by the answer, and in our opinion the plaintiff has failed in doing away this denial (which is directly responsive to this part of the bill), though the answer was unsupported. Vide [Union Bank v. Geary,] 5 Pet. [30 U. S.] 110, 111. The defendant also avers in his answer, that he acted not as the agent, attorney or trustee of the testator, in any capacity whatever; that what he did, was purely and solely to serve Eckert and family. It is then incumbent on the plaintiff, to make out the defendant to have become his bailiff or receiver, by something independent of the receipt of the 2800 dollars; if he has succeeded in this, another difficulty occurs. Admitting that the alleged agreement was made, its obligation was a legal one, and the remedy at law upon it, so far as we can perceive, complete. The evidence of this agreement was in writing in possession of the plaintiff, and connected with the answer, presents the whole case; no evidence has been given at the hearing which gives any new turn to it, or presents any matter for equitable relief on the ground that defendant was the bailiff or receiver of the plaintiff, in any thing but the receipt of the money for which he had

accounted, and the account was settled by acquiescence. No change of circumstances could open this account for revision. All future accountability rested on the subsequent agreement, which related to the performance of certain acts, and cannot be carried back into the original account, so as to make the performance or non performance of the agreement, a matter of account. As a settled account cannot be opened directly, it cannot be done collaterally; the only pretext for it is, that defendant acted in both transactions as plaintiff's agent, consequently they make but one account, which cannot be closed without embracing the whole conduct of the defendant. The answer denying the agency not having been disproved, excludes the jurisdiction of equity,—[Russell v. Clark,] 7 Cranch, [11 U. S.] 89; 3 Ves. 446,—and the defendant has rendered a full account of both transactions, it was not to open the old account, or to attach any responsibility not existing when it was rendered, nor can the court give it that effect, for though a defendant does not demur but answers, it does not give the plaintiff a right to any relief, to which he is not entitled by his bill. 1 Pet. C. C. 363, 383; [Andrews v. Solomon, Case No. 378; Thompson v. Tod, Id. 13,978;] Mitf. Eq. Pl. 87. That part of the plaintiff's claim which grows out of the agreement in October 1819, is for damages for its non performance, not for money pretended to be actually in the hands of the defendant; the sole question is whether the money was applied according to the agreement. If it was, the plaintiff has no case on his own showing. If not, the amount misapplied is a mere matter of calculation, as easy for a jury as a master. To sustain a bill for an account, there must be a series of demands and payments,—2 Caines, Cas. 51,—mutual dealings,—2 Johns. Ch. 171; 6 Ves. 139, 141; 9 Ves. 473,—great complexity in the accounts, some doubt or difficulty in proceeding at law, or some discovery required,—[Fowle v. Lawrason,] 5 Pet. [30 U. S.] 503; 6 Ves. 89; 10 Johns. 595; 2 Strange, 733; 1 Ves. Jr. 424; 13 Ves. 278, 279,—so that a court of law would not be competent to try it at nisi prius, and where the justice of the case depended on the account,—1 Schoales & L. 308, 309. The case must be one proper for an action of account at law, and involve an account. [Fowle v. Lawrason,] 5 Pet. [30 U. S.] 503; 2 Caines, Cas. 54. If the bill show a liquidated sum incapable of being entangled, it will be dismissed, as all difficulty of proceeding at law will be removed. 6 Ves. 688; 2 Rand. 450; [Graves v. Boston Marine Ins. Co.,] 2 Cranch, [6 U. S.] 444; 2 Mason, 270, [Bean v. Smith, Case No. 1,174;] 4 Wash. C. C. 352, [Mayer v. Foulkrod, Case No. 9,341.] So where the facts are within the knowledge of plaintiff, and the answer confesses nothing, or furnishes no evidence to support the bill. [Russell v. Clark,] 7 Cranch, [11 U. S.] 89. So where the object of the bill is to recover damages for the breach of an agreement, and not its specific performance,—Mitf. Eq. Pl. 95; [Hepburn v. Dunlop,] 1 Wheat. [14 U. S.] 197; [Boyce v. Grundy,] 3 Pet. [28 U. S.] 214, etc.,—or the plaintiff has a remedy by statute,—3 Atk. 740. Different reasons are assigned for the jurisdiction of equity in account, by Lord Redesdale, the difficulty of proceeding to the full extent of justice in courts of common law, (Mitf. Eq. Pl. 96,) by Lord Eldon, to avoid multiplicity of suits, (5 Ves. 687,) by Chancellor Kent, that it originated in discovery, (2 Caines, Cas. 52.) Assuming either as the ground, neither exists in this case. There must be some appropriate head of equity jurisdiction under which an account must be decreed. 1 Madd. Ch. Pr. 89; 1 Ves. Jr. 424; 3 Conn. 141; 1 Brown, Ch. 194. It is not enough to charge it in the bill, to change the jurisdiction, it must be distinctly made out. (3 Brown, Parl. Cas. 525; 2 Brown, Cas. 340, 519; 1 Ves. Sr. 172; 1 Atk. 598; 1 Vern. 359; 2 Vern. 382, 386; 1 Ch. Cas. 144, 147, 184,) or some ground of equity exist, growing out of the conduct of the defendant, (1 Brown, Ch. 40, 201; 2 Cox, 362; 2 Mason, 417, 418, [U. S. v. La Jeune Eugenie, Case No. 15,551.]

There are cases affirming the broad principle that courts of law and equity have a concurrent jurisdiction in account. 13 Ves. 279. It has been carried so far as to embrace all cases of principal and agent. 4 Madd. 199, 220. So it has been held in late cases of dower, though they seem to be considered as exceptions, rather than as falling within the principle of concurrent jurisdiction, as the interference of equity is on the ground of discovery, the removal of legal impediments, or some equitable circumstance to regulate its exercise. 3 Brown, Ch. 630; 5 Johns. Ch. 488; Prec. Ch. 244, 248; [Herbert v. Wren,] 7 Cranch, [11 U. S.] 376; 3 Atk. 130. The law had been explicitly laid down, that the chancellor had nothing to do in assigning dower, but in case of lands held in chivalry, (2 Ld. Raym. 785; 7 Mod. 43; Prec. Ch. 111;) yet in 1793 Lord Thurlow sustained a bill for dower, solely on the ground that the title was admitted by the answer, (4 Brown, Ch. 296; 2 Ves. Jr. 122.) This was the establishment of a new rule abrogating an established one, and forcibly illustrating the gradual assumption of jurisdiction by the court of chancery, in cases which by the ancient land marks of the law were cognizable only at law. We cannot adopt these or other innovations as guides, but must consider them as beacons, in the administration of the equity jurisprudence of this court. We cannot adopt any rules or principles of the law, which are in contradiction to those which were settled and established before the Revolution, [Cathcart v. Robinson,] 5 Pet. [30 U. S.] 280,—nor extend our jurisdiction in account beyond the rules prescribed by the supreme court in [Fowle v. Lawrason,] 5 Pet. [30 U. S.] 503. They re-

sult from the provisions of the constitution and judiciary act, which cannot be affected by any subsequent adjudications of any courts in England, or in those states which adopt them. In the present case there is nothing in the nature of the agreement, or in the conduct of the defendant, which can give any equitable jurisdiction over it; nor does the defendant stand in that relation to the plaintiff, as to make him liable to a bill or action to account. He is neither bailiff, or guardian, and as the account is not between merchant and merchant, the plaintiff must make him out to be receiver before there can be a case for account. Co. Litt. 172a; 2 Co. Inst. 379; Bull. N. P. 127. A receiver is one who receiveth the money of another to render an account. Co. Litt. 172. But a party cannot have account of money in which he has no property, as if A directs B to borrow money from C to pay D, the account lies not by A, but D. Hob. 36. If defendant has paid over the money as a trustee, the trust is executed and an account does not lie. 3 Wils. 114. There must be a privity between the parties, continuing till suit brought; account lies not by an executor or administrator at common law for want of privity, it is given by statute. Co. Litt. 89, 90, 96; 1 Com. Dig. 192. Here all privity arising from the receipt of the money, ceased on its payment to the persons directed, and rendering an account not objected to; there remained no subject matter to which the relation of receiver could apply at the time of the agreement, and as the money had passed from the testator for certain purposes, the property in it could only revest on their non performance. 1 Dyer, 22b. For these reasons we cannot sustain the bill under the head of account.

3. Trust. Where the legal right of property real or personal, is in one person for the use of another, there is a trust resting in confidence and conscience, on which a court of law cannot act, as it looks only to the legal right; hence a trustee is accountable only in equity, which acts on the conscience according to the justice of the case. 2 Jac. & W. 147 to 191. If a trustee gives a covenant to perform the trust, he is suable at law. [Duvall v. Craig,] 2 Wheat. [15 U. S.] 56. If A assigns goods to B to sell and pay the proceeds to C, and B receive them without a promise to pay C, his remedy is in equity. If B promises to pay C, the remedy is at law; so if A consigns goods to B to deliver to C, and B accepts the consignment, or any agreement is made to perform the trust, [Tiernan v. Jackson,] 5 Pet. [30 U. S.] 594, 602,—or the trust is executed,—3 Wils. 114,—the right to the property is then a legal one. To give jurisdiction to equity, some part of the trust must remain unexecuted, some act remain to be done which rests in confidence; the mere relation between the parties of trustee and cestui que trust, is not enough, there must be that trust which is a creature of a court of

equity, not cognizable at law, (7 Johns. Ch. 114,) on which no action lies, but is only for the consideration of equity, (2 Atk. 612,) which acts to carry into effect the principles of law where it provides no adequate remedy, and supplies its defects, (1 Madd. Ch. 450; 2 Schoales & L. 630; 4 Johns. Cas. 654.) For the breach of all other trusts, an action lies at law. 1 Salk. 9; Wils. 204. It is a simple contract for which the remedy is personal. 2 Ves. Sr. 19; 2 W. Bl. 1269, 1272. Wherever the money or property of another is held on a legal trust, the right being legal, the legal remedy is adequate. 1 Bos. & P. 286, 288; 2 Bos. & P. 279, 281; 1 Maule & S. 714, 720; 7 Taunt. 403; 2 E. C. L. 156; 9 East, 378; 14 East, 590. So where there is a special agency, and the contract is closed wholly or as to any particular object, if the agreement, or its further execution has been ended by the death or act of the other party, it is a subject for law if the matters are distinct and can be separately executed. [Perkins v. Hart,] 11 Wheat. [24 U. S.] 250, &c.

In considering the transactions between the parties, we can discern no right in the plaintiff resting in confidence; if there was any trust it was a legal one. The answer discloses nothing of an equitable nature, the case is one where any discovery would be merely auxiliary to law, to enable the plaintiff to recover damages for the breach of the agreement alleged to have been made. As matter of mere trust, any which has ever existed has been executed, so far as confidence was reposed in the discretion of the defendant; if we sustain this suit on the deposit in April 1819, it will be on the principle that every bailment is a trust involving an account in equity. If it is sustained on the alleged agreement in October, we assume equity jurisdiction in all cases of principal and agent, where one agrees to do an act or receives money or property for another, though there is a complete remedy at law to recover damages for the breach of the undertaking. Being satisfied that the plaintiff has not made out a case for the relief prayed for in his bill under the head of discovery, account, trust, or other appropriate branch of equity jurisdiction, the bill must be dismissed.

NOTE, [from original report.] The remark of Lord Hardwicke, that "answering submits to the jurisdiction," has been misapprehended as appears by the case as reported. "The bill was for a specific performance and execution of the articles, what else was in the cause came by way of argument to support, or objection to impeach this relief prayed. The first objection for defendant was, that this court (of chancery) had not jurisdiction nor ought to take recognizance of it; for that the jurisdiction is in the king and council." 1 Ves. Sr. 444, 445. This objection, with others, which went to the jurisdiction, were considered elaborately, though they were not set up by the answer; the authority of this case is therefore in direct opposition to the position for which it is cited. The remark is consistent with the course taken, it is correct as a general rule, when applied to an

'objection to the jurisdiction of the high court of chancery, on the ground that an inferior court of equity has cognizance of the case; but it is not applicable to a case which is not cognizable in any court of equity, on account of the subject matter. With this distinction in view, this remark taken in connection with the whole sentence, the case before the court, and its course in its decision, is not only in perfect conformity with the cases which establish the principle laid down in Baker v. Biddle, but a direct affirmance thereof.